Good morning. May it please the court. This particular case has an established record. Can you say your name? Yes. Oh, I'm sorry. Kimberly K. Tucker for the appellant Patricia Street. And could you spell her name? Is it two T's? It is two T's. Thank you. It was misspelled. My law clerk has been very concerned about that as well. Thank you. You are correct. It's two T's. The record does establish the diagnosis of fibromyalgia. However, the administrative law judge found a residual functional capacity for straightforward sedentary work, no non-exertional limitations, full range of sedentary work. As explained by one of the treating physicians of record, Dr. Gallegos, fibromyalgia causes a high risk for levels of high pain that can influence focus. The question really is what evidence in the record is there that requires a finding of some limitations? What is the evidence in the record? Well, it's a very interesting situation in this case because we do have objective evidence that points not to what they were testing for but to limitations from fibromyalgia. I refer you to the several heart studies that were done, treadmill tests and other sorts of tests. For instance, September 2004, she was found to have exercise intolerance after only six minutes of exercise. Are you talking about the non-exertional limitations or are you talking about the exertional limitations? This would be non-exertional because it's kind of a hybrid actually. It would impact her ability to, well, for this it would impact her ability to stand and walk more than six to ten minutes at a time because in the record, these heart tests, she's exercising for that amount of time and showing very marked fatigue. However- But I thought the ALJ also relied on her daily activities. She's limited but she is at least, she says on her better days, three days a week, she can at least move around, do some cooking. She shops with her daughter and that kind of stuff. So you're suggesting that she is so out of shape that she can't get up and move around for more than six minutes at a time? How is that consistent with her ability to go out even three days a week? Then she couldn't leave the house. Well, I do acknowledge that she is not that limited every day. Fibromyalgia, one of the key factors is that people have good days and bad days. Well, we don't have a blanket rule. We see lots of fibromyalgia cases and it's evolved over the years. It's become more and more understood. But still, if they have good days and bad days, you're saying hers is so acute, as I understand the thrust of your testimony, is that we should criticize or fault the ALJ because you said she could do a sedentary job even though she's able to get up and do some normal activities of life. You're imposing a six-minute limitation. That seems extreme. Right, and that is going to be on a bad day, Your Honor. It goes to the, I guess you would have to consider it a non-exertional limitation, which would be the ability to sustain work activity, which is also implicit in any RFC finding. To find someone not disabled, it is assumed that they can sustain basically a full-time schedule without missing more than a couple days per month. Social Security ruling 96-8 provides the guideline for that. But your brief, you say that the ALJ didn't consider the 2002 MRI of the neck? That, yes. But actually, I think, if you look at the record, at ER 415, the ALJ gave specific reasons why he found that the neck pain was not disabling, specifically your client's decision not to take pain medication, client's decision failing to follow up physical therapy, the lack of referral to a neck specialist for evaluation, and Dr. Becker's examination which showed that there was a full range of neck motion. So isn't there, I mean, we're not doctors, you know. I mean, here the ALJ sees your client, looks at the records, makes certain determinations, and the question is, are those unreasonable determinations? And, you know, the ALJ gave six reasons not to credit your client's complaint about her neck injury, including that one doctor found no evidence of it. Right. And then again, part of the issue is one can have pain without limitation of motion, and the issue goes back to pain. It's always difficult with the pain cases. It is difficult, and she says that she can only take butalbitol for her pain. That's to say the only pain medication she can tolerate. Do we have evidence in the record besides her statement that that's the only pain medication she can tolerate? Unfortunately, we do not. If I could also address Justice Breyer's issue. Judge. Judge Breyer's issue. Don't get confused. The issue about the ALJ's citation to her failure to do certain things, that goes back, of course, to a failure to comply with prescribed treatment, which puts us under Social Security ruling 82-59, and that requires very specific findings and inquiries as to are there reasons that the person did not comply. That was not done here. We don't know why she didn't comply, and that constitutes error as well. Well, what do you mean we don't know why she didn't comply? If she didn't comply and didn't have a good reason, well, we don't know why she didn't comply. That is to say she didn't have a reason for not complying. Right. But the 82-59 seems to put a higher duty on the decision maker to make an affirmative inquiry as to. Well, it wasn't a surprise. I mean, your client was told by a number of doctors repeatedly, go exercise. Right. Try to walk. Walk a mile. And then she just didn't. And, I mean, I just tried to figure out when a certain willfulness in terms of her behavior, you know, and not following any medical advice or not following the medical advice that was provided by a number of doctors, and then she says, well, I can't do it. Right. Well, I believe that the support for her allegation that she can't do it and the reason why she did not do it can actually be found in those heart tests. While she was not found to have a heart disease, she was found to be incredibly exercise intolerant. One of the halter monitor readings, she had tachycardia and reported fatigue just walking in from the parking lot to the doctor's office. Well, what do we do with Dr. Becker's notes? She was a treating physician. And did she like it? She said, on the whole, this is in 2002. I don't think at this time she's a candidate for being disabled. My thoughts are she could probably do some clerical work. With regard to her weight, I strongly recommend that she start walking and get out at least a mile every day. And then your client says, well, I don't like it. She's not telling me what I want to hear, basically, so she switches doctors. But ALJ has that in the record. That's a treating physician who has that commentary. Yes, and it is interesting because the fibromyalgia diagnosis actually came later, and Dr. Becker would not have been aware of that diagnosis. Also, most of the heart studies I've cited that show the actual fatigue and tachycardia, they were after Dr. Becker's treatment relationship with Ms. Street had ended. Yes, the problem with that argument, well, I've got two problems. One is, and I'll just continue along Judge Fisher's line for a moment, Dr. Becker not only says or writes what Judge Fisher says, she also writes, and she's the treating physician, that your client, quote, wants to be disabled, which suggests exaggeration of symptoms and so on. So that's not very helpful. But the second point I would like to make is that the job that the ALJ or jobs the ALJ finds your client can do don't involve walking. They're basically sedentary jobs. So your client's not being asked to do physical labor that would implicate whatever heart problems she contends she has. Right.  Of course, those jobs don't involve a lot of exertion. But we go back to the ability to sustain. The evidence does indicate that even when she's not active, not very active at all, she's having extreme fatigue. And the reasonable inference is that one would need to take a hard look at whether she's going to be able to consistently be at work and sustain a job. Okay. I think we've got your argument well on hand. You've used your ten minutes. Let's hear from the other side, but we'll give you a minute to respond. Thank you. I appreciate that. Good morning, Your Honors. My name is Thomas Ellsbury. I'm here for the commissioner. I'd like to start by addressing some of the issues that were raised during the streets council's argument. She talked about the heart functioning. And the record, I think, was particularly well discussed by the ALJ. And in particular, the reports from Dr. Hwang, or I'm not sure how to pronounce the name, and Dr. Green in May and August of 2004, respectively, both of which found normal heart functioning. Dr. Green, in particular, found no, he did a stress echocardiogram test, I believe it was, and found it negatively objective for exercise-induced ischemia or sarcoid. Easy for you to say. Not really. In this case, toward the end of the period under review, we have two examining physicians, one an expert, are opining no abnormal heart functioning, in fact, normal heart functioning. What do you do with council's argument, though, that it's compounded by fibromyalgia, so she does appear to have a strong resistance to any exercise, although stress echocardiograms, at least in my experience, are on a treadmill, and so they keep trying to get your heart rate up, and some people get it up real fast, and it sounds like she did. What do you do when you combine that objective medical evidence, that there is some reaction to the fibromyalgia? I think the LJ's decision accounted for it. In particular, comparing the two objective tests earlier on, test B, I believe it was August of 2002, which the test that failed because she had to quit because of the elevated heart rate, or it was approaching a stressful point, and then she ceased exercising after an injection to track something. I'm not quite sure what the process was, but the medical report says there was an injection, and at that point she ceased her exercising, but she was approaching the limit. The later test in August of 2004 said no stress, exercise-related stress in the heart function. Its relation to fibromyalgia, I think, is accounted for. I think earlier on, the diagnosis of fibromyalgia was being, they hadn't even reached it yet, and it wasn't until later that it was determined that that was the impairment that was causing it. In fact, I think it was Dr. Wang who said that seemed to be the chief cause of her limitations. The ALJ accounted for those limitations, looking at the longitudinal record, and found her, despite medical opinion saying she could do light work, limited to sedentary work, taking into account things like fatigue, pain, and those other elements he lists in his decision. He specifically states he is considering those elements in assessing her residual RFC. And I guess I would also argue that, in fact, the issue of her limitations has not even been brought before the court. The issue of the ALJ's finding of her credibility was not raised in the street's opening brief, and therefore is waived. Same with the issue of the ALJ's assessment of the medical source opinions, both of which were affirmed by the court below, excuse me, by the district court. There was also discussion of pain medication. The record actually has her stating, or a doctor stating, she should take beta blockers, particularly in light of possible stress issues and anxiety issues, but that Ms. Street, quote, prefers no prescription meds. So it's a choice. That's what the record indicates. Not that she's unable to take prescription medication, but that she chooses not to. The ALJ noted several physicians who also recommended throughout the record that she exercise. Her testimony was that she could only take one to two steps before she had to rest. We have her prior testimony reports to doctors that she walks a mile a day. We have physicians saying, increase your exercise, one in particular saying, by 10 percent a week. I think that's actually consistent throughout the period under review by the ALJ. Increase your exercise. You need to increase your exercise. Now, there are several points in the record where it's stated, referring to what she says, that because of her inactivity resulting from her problems, she has gained 50 pounds. I couldn't quite pin down when that weight gain took place. Could you help me with that? I was not able to clearly pin it down. I believe it was first suggested quite early in the record, so I would surmise sometime in 2002. So I think the weight gain was an issue throughout as an issue for her, but it didn't seem to be an issue for all of the physicians who recommended more exercise, even minimal, just beginning a slow exercise program. I think it's taking into consideration the fibromyalgia, weight gain from the inactivity, from the sedentary behavior that she was in at that time. As several doctors noted, it was deconditioning. She needed to increase her exercise. Okay, yeah. The final point I guess I'd like to make is the argument that the failure to follow prescribed medication, as it was discussed by Ms. Street, that standard is for finding a claimant not disabled based on the failure to follow prescribed medication. Now, do we have failure to follow prescribed or something else? Failure to, well, in this case with ELJ, it's not just medication. It's failure to follow treatment. So prescribed medication, I believe, was the beta blockers, and I think there's another physician as well that I cited in my brief that also talks about prescribed medicine that she chose not to take or there's no evidence that she followed up with. It's also the exercising, and that is a proper consideration for credibility finding. Okay. If there's no more questions, I will. I think not. Thank you. Would you like a minute? Counsel for the appellee has raised the issue of, again, of the heart testing. Let me ask you this. What do you make of the argument that you've waived certain arguments by failing to raise them in your brief? I do wish to address that. Thank you. The ELJ's credibility finding is implicitly a part of my argument that he rejected non-exertional limitations. Well, implicitly is sometimes in the eye of the beholder. I might suggest that the next time you write a brief, you are more thorough in raising all of your arguments. I will be. Thank you. Again, the heart testing, the ELJ, in his decision, focused on the fact that no heart disease was found. He did not look at the aspect of the fatigue and the poor stamina that this testing was showing as it might relate to other impairments in the record. The fatigue is there. The poor stamina is there. You're over your minute, so if you want to just wrap up. To conclude, as I've argued, the RFC found by the ELJ just does not adequately encompass for impairments and limitations, and for that reason, the appellant is requesting a remand for further proceedings. Okay, thank you very much. Thank you. Thank both parties for their argument. The case of Street v. Astro is now submitted for decision. The next case on the argument calendar is Curtis v. City of Redmond.
judges: Fletcher, Fisher, Breyer